674 F.2d 1016
 29 Cont.Cas.Fed. (CCH) 82,415
 PRINCETON COMBUSTION RESEARCH LABORATORIES, INC., Appellee,
v.
Director, John McCARTHY, Jr., United States National
Aeronautics and Space Administration, Lewis
Research Center at Cleveland, Ohio.
Appeal of SHAKER RESEARCH CORPORATION.
 No. 81-3011.
 United States Court of Appeals, Third Circuit.
 Submitted March 15, 1982.
Decided March 29, 1982.
 
 W. Hunt Dumont, U. S. Atty., Ann C. Singer, Asst. U. S. Atty., Newark, N. J., for appellant, John McCarthy.
 Martin Summerfield, President, Princeton Combustion Research Laboratories, Inc., pro se.
 Before ADAMS, VAN DUSEN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 This appeal arises out of a decision by Appellant, the National Aeronautics and Space Administration ("NASA"), to award a procurement contract to the other Appellant in this case, the Shaker Research Corporation ("Shaker") rather than to the Appellee, Princeton Combustion Research Laboratories, Inc. ("Princeton Combustion"). In an order dated December 4, 1981, the district court granted Princeton Combustion's motion for a preliminary injunction, declaring the award of the contract to Shaker to be clearly illegal and enjoining NASA from re-awarding the contract until it followed the proper procedures.[1] Because we find that the district court's grant of the motion for a preliminary injunction was improper, we will vacate the district court's order of December 4, 1981.
 
 I.
 
 2
 On April 3, 1981, the Lewis Research Center at Cleveland, Ohio, issued a Request for Proposal for a NASA contract for research into combustion technology. The information gained thereby would be used in the development of the Spacelab project, and though the contract itself was to be of a duration only of six months, further research and development, and so additional contracts, were also contemplated.
 
 
 3
 By the closing date of May 21, 1981, six companies had submitted bids in response to the Request for Proposal. The proposals were then forwarded to a Technical Evaluation Committee ("TEC"), which evaluated the strengths and weaknesses of the proposals and gave them ratings. The proposal submitted by Shaker was given the highest rating[2] and carried a proposed cost of $37,647, only $1,000 more than the lowest bid and some $40,000 lower than the highest bid. The proposal submitted by Princeton Combustion was given the second-highest rating, and carried a proposed cost of approximately $10,000 more than the Shaker bid. In addition to rating them, the TEC also presented a detailed analysis of the bids. Shaker's proposal, the TEC found, showed "major strengths" in three of the four areas in which the evaluation was made[3] whereas Princeton Combustion's proposal showed only "minor strengths" in those areas.[4] Accordingly, on July 13, 1981, Shaker was selected as an offeror within the competitive range.
 
 
 4
 On July 21, 1981, Shaker submitted a revised proposal, naming a new Project Manager to replace the one who had just resigned, and proposing a slightly higher project cost. The TEC reconvened and determined that the point score assigned to Shaker's proposal should remain unchanged. Moreover, the increase in costs was considered to be only minor and still left Shaker's bid among the lowest submitted. Thus when the final selection was made on July 31, 1981, Shaker was given the contract. In accordance with NASA regulations, see 41 C.F.R. Ch. 18, § 3.106-3, the unsuccessful bidders were notified by letter on August 4, 1981, that they had not been selected. The unsuccessful bidders were also given an opportunity to meet with NASA officials concerning their rejection, and on September 18, 1981, Princeton Combustion took advantage of that opportunity. After the meeting, Princeton Combustion protested the selection of Shaker, informing NASA of its objections by telephone on September 24, 1981, and by two telegrams that NASA received sometime on September 25, 1981. In the meantime, NASA and Shaker had commenced negotiations over the final form of a contract, and having reached agreement, signed one on September 25, 1981.
 
 
 5
 On October 14, 1981, Princeton Combustion filed a complaint against NASA and Shaker in federal district court, seeking damages and injunctive relief. Specifically, the complaint requested that the district court set aside the award of the contract to Shaker and award it instead to Princeton Combustion. In essence, Princeton Combustion alleged that Shaker had little expertise in combustion technology, that Princeton Combustion's own proposal was superior, and that NASA had wrongfully refused to divulge to Princeton Combustion certain information regarding Shaker and the selection process. Princeton Combustion also charged that "(a)fter awarding the contract to Shaker, Defendant NASA permitted Shaker to increase its bid price," and, asserting that "(c)hanges after bid closing are rarely permitted," Princeton Combustion noted that Shaker had, on July 21, 1981, changed the Project Manager in its proposal. Complaint, PP 30, 31.
 
 
 6
 After a hearing on November 16, 1981, the district court announced on November 20, 1981, that it intended to issue an order declaring the contract illegal and enjoining its further performance. In an opinion delivered from the bench, the district court correctly stated the principles governing the grant of preliminary injunctive relief. The district court held that in general, the plaintiff must show that he has a reasonable probability of success on the merits, that he will suffer irreparable harm in the absence of preliminary injunctive relief, and that the interests of other affected persons and the general public weigh in favor of the grant of injunctive relief, or at least do not militate against it. In the area of government procurement contracts, however, the district court correctly noted that a more stringent standard governs a determination of the first factor, the likelihood of plaintiff's prevailing on the merits. Though the bidder has a legitimate interest in fair treatment in accordance with applicable statutes and regulations, the strong public interest in efficient procurement and cost minimization mandates that a procurement contract not be set aside at the behest of a "disappointed bidder" unless the awarding agency's decision was irrational or clearly illegal.
 
 
 7
 Applying those principles to the case before it, the district court found that the initial decision to award the contract to Shaker was rational, notwithstanding plaintiff's contentions to the contrary. App. 278-82. The district court also found that the decision to choose Shaker even after it had submitted its modification on July 21, 1981, was rational. App. 284. The district court, however, found that NASA had violated a regulation governing the acceptance of late modifications. That regulation, 41 C.F.R. Ch. 18, § 2.303-2(d), provides that "a late modification of an otherwise successful bid which makes its terms more favorable to the Government will be considered at any time it is received and may be accepted." The district court held that because the change of Project Manager and the increase in cost had been made after May 21, 1981, the closing date for the bids, Shaker had submitted a "late modification" within the meaning of the regulation. Inasmuch as the Project Manager under the modified proposal had qualifications that were merely "equivalent" to the previously-named Project Manager, the district court found that the modification was not on "more favorable (terms) to the Government." NASA's acceptance of the late modification, the district court concluded, "violated the regulation and therefore was illegal." App. 284.
 
 
 8
 Having found the agency's action to be clearly illegal (though rational), the district court went on to consider whether a preliminary injunction should be granted. The district court held that the delay occasioned by an injunction would cause no significant harm to the public interest in the agency's efficient functioning, because the Spacelab was only in the development stage and its launching was still a number of years away. Nor did the public interest in avoiding excessive costs weigh against the grant of a preliminary injunction, because after the modifications submitted on July 21, 1981, Shaker's bid was only about $5,000 less than Princeton Combustion's; at any rate, the contract was a cost-plus contract, so that the difference between the two bids might prove illusory once the contract was actually performed. Finally, the district court held that because NASA had so clearly violated its own procedures, Princeton Combustion's interest in fair treatment was very strong. This interest, the district court held, outweighed Shaker's interest in not having its contract set aside two months after it had begun performing it. Thus the district court declared the contract signed by Shaker and NASA on September 25, 1981, to be null and void, and ordered NASA to reconsider the Shaker modifications of July 21, 1981, in accordance with the governing procedures, and to resolve the written protests that Princeton Combustion had submitted on September 25, 1981.
 
 
 9
 Upon NASA's motion for reconsideration, however, the district court issued an order dated December 4, 1981. In an accompanying opinion delivered from the bench on December 3, 1981, the district court acknowledged that it had erred in finding that NASA had illegally failed to comply with 41 C.F.R. Ch. 18, § 2.303-2(d); that regulation applies only to procurements by formal advertising, and not to procurements by negotiated contract such as the one between NASA and Shaker. See 41 C.F.R. Ch. 18, § 2.000. Nevertheless, the district court reaffirmed its finding of "clearly illegal" conduct on the part of NASA and issued an order setting the Shaker contract aside and enjoining NASA to reconsider the modifications and to resolve Princeton Combustion's written protests. The basis for this decision was a holding that NASA had violated the regulations governing modifications to proposals for negotiated contracts, 41 C.F.R. Ch. 18, § 3.802-4(b). That section provides that all written requests for proposals shall contain a provision stating in part that
 
 
 10
 (t)he Government reserves the right to consider proposals or modifications thereof received after the date indicated for such purpose, but before award is made, should such action be in the interest of the Government.
 
 
 11
 Moreover, that same regulation lays out procedures for the considerations of late modifications:
 
 
 12
 Proposals, or modifications thereof, received from qualified firms after the latest date specified for receipt may be considered if there is a probability of a significant reduction in cost to the Government, or technical improvements, as compared with proposals previously received. In such case, the negotiator shall investigate the circumstances surrounding the submission of the late proposal or modification and evaluate its content. He shall then submit his recommendations and findings to the contracting officer, in writing, as to whether, in his opinion:
 
 
 13
 (i) the company submitting the proposal has an excusable reason for late submission;
 
 
 14
 (ii) there is an advantage to the Government to consider the proposal;
 
 
 15
 (iii) all companies submitting proposals should be resolicited; and
 
 
 16
 (iv) time of performance permits such resolicitation.
 
 
 17
 The contracting officer shall thereupon determine whether the proposal should be considered or rejected, or a resolicitation of proposals should be made.
 
 
 18
 Id. § 3.802-4(b)(2).
 
 
 19
 The district court held that the NASA had failed to comply with this regulation in two respects. First, while the Government had decided that it would be advantageous to accept the late modification, "there is no evidence that it ever considered the other three criteria." App. 315. Second, the district court held that "there is no evidence that any recommendations or findings were submitted in writing to the contracting officer. NASA simply did not follow its own procedures ... (and it) has offered no explanation as to why it did not comply with that provision." Id. at 315-16.
 
 
 20
 The district court then reaffirmed its previous rulings concerning the balance of the public interest in efficient procurement and Princeton Combustion's interest in fair treatment, and issued an order providing, among other things, that
 
 
 21
 1. The Contract awarded to Shaker Research Corporation is illegal and is hereby set aside;
 
 
 22
 2. Re-Award of the contract is hereby enjoined until
 
 
 23
 (a) NASA, in evaluating the proposals for the subject contract, which have already been submitted, utilizes the proper procedures pursuant to 41 CFR Ch. 18 § 3-802-4 for dealing with late modifications of proposals; and until
 
 
 24
 (b) NASA resolves plaintiff's written protest pursuant to its applicable regulations.
 
 
 25
 The district court also refused NASA's request for a stay of its order.
 
 
 26
 On December 9, 1981, NASA filed a notice of appeal from the district court's order. On December 17, 1981, this court, as previously noted, stayed the district court's order pending appeal.
 
 
 27
 This court has jurisdiction over the appeal under 28 U.S.C. § 1292.[5] We now reverse.II.
 
 A.
 
 28
 NASA raises a number of objections to the district court's decision.[6] First, it contends that there is no evidence in the record upon which the district court could base a finding of failure to comply with § 3.802-4. There is a presumption of administrative regularity, and the only evidence to the contrary was a document filed with the district court on November 27, 1981, by Princeton Combustion's president.[7] Second, NASA argues here, as it did before the district court, that Princeton Combustion's failure to allege in its complaint that § 3.802-4 had been violated should have precluded Princeton Combustion's effort to raise the issue "for the first time late in litigation only after plaintiff had been educated by defendants' motion for reconsideration as to which regulations were applicable to this procurement." Appellant's Brief at 34.[8] Third, NASA contends that Princeton Combustion's written protest was untimely, having been received by NASA in the afternoon of September 25, 1981, after the Shaker contract had been signed.[9]
 
 
 29
 We need not pass on any of these contentions, however, because the district court's failure to heed this court's admonition that "courts should not overturn any procurement determination unless the aggrieved bidder demonstrates that there was no rational basis for the agency's decision," Sea-Land Service, Inc. v. Brown, 600 F.2d 429, 434 (3d Cir. 1979), provides a sufficient basis for overturning the grant of injunctive relief.
 
 B.
 
 30
 In two recent cases this court has set out the standards governing the grant or denial of a disappointed bidder's motion for a preliminary injunction against the award of a government contract. Allis-Chalmers Corp. v. Friedkin, 635 F.2d 248 (3d Cir. 1980); Sea-Land Service, Inc. v. Brown, supra. See also M. Steinthal & Co. v. Seamans, 455 F.2d 1289 (D.C.Cir.1971). In both cases, we have made it clear that the district court's review of an agency's procurement decision is extremely limited in scope. The district court is not to substitute its judgment for the agency's, but may only act when an agency's decision is found to be irrational. Even if the district court finds that the agency's decision lacks any reasonable basis, moreover, it does not automatically follow that plaintiff is entitled to injunctive relief. "Judicial intrusion into government purchases necessarily delays completion of the contract and increases costs, with little measurable benefit to the public." Allis-Chalmers Corp. v. Friedkin, supra, 635 F.2d at 252-53. Thus, even if the district court finds that the agency's decision was irrational, the district court nevertheless has discretion to decide whether to grant or deny the injunction. In exercising that discretion, the district court is to be guided by a balancing of three factors:
 
 
 31
 the practical considerations of efficient procurement of supplies for continuing government operations; the public interest in avoiding excessive costs; and the bidder's entitlement to fair treatment through adherence to statutes and regulations.
 
 
 32
 Sea-Land Services, Inc. v. Brown, supra, 600 F.2d at 434.
 
 
 33
 In this case, the district court found that NASA's decision to accept the Shaker bid even after the modifications submitted on July 21, 1981, was rational. Not only do we agree with this holding, but we do not see how any other conclusion is possible on this record. After the modification was submitted, Shaker's bid was still lower than Princeton Combustion's bid, and upon re-evaluation Shaker's proposal still had a higher rating than did Princeton Combustion's. Further, even assuming without deciding that NASA's handling of the modification violated applicable agency procedures, there was no showing-and there could be none on the record before us-that the violation in any way rendered the agency's decision irrational. Thus in the circumstances presented in this case, even if NASA failed to comply with any of the provisions of its regulation 3.802-4(b), that "violation" did not rise to the level of illegality necessary to undermine the determination that NASA's decision was rational.
 
 
 34
 We hold that as a matter of law, once the district court, having considered allegations that the agency's decision lacked sufficient factual basis, was tainted by procedural irregularities, and so on, nevertheless determines that an agency's procurement decision is rational, its inquiry is at an end: the district court must deny the motion for a preliminary injunction, and may not go on to engage in a balancing of the three factors specified in Sea-Land.
 
 
 35
 A district court's discretion as to whether or not to grant a preliminary injunction cannot be predicated upon just any violation of applicable statutes or regulation; only if the violation, if committed, renders the agency decision irrational may the district court go on to consider whether a balancing of the three Sea-Land factors justifies the grant of a preliminary injunction with all the attendant disruption of orderly procurement processes. In this case, nothing in NASA's alleged violations of its procedures persuaded the district court that NASA's decision was irrational, either because it "lack(ed) a reasonable basis" or was "fundamentally unfair." Sea-Land, 600 F.2d at 435. Indeed, even assuming what NASA does not here concede-that it committed a violation of its own procedures-the facts as they appear on this record can support only the conclusion that the "violations" were harmless. Thus on that basis alone, the district court should have denied Princeton Combustion's motion for a preliminary injunction. In addition, we have considerable difficulty in understanding Princeton Combustion's claim that it has suffered irreparable injury. The pleadings reveal no more than injuries cognizable in money damages. Nowhere has the plaintiff specified in its pleadings that it could not be compensated in this fashion. We have held, however, that for an injunction to issue "the injury must be of a peculiar nature, so that compensation in money cannot atone for it." A. O. Smith Corp. v. FTC, 530 F.2d 515, 525 (3d Cir. 1976) (quoting Gause v. Perkins, 3 Jones Eq. 177, 69 Am.Dec. 728 (1857)).
 
 III.
 
 36
 We note that in its complaint, Princeton Combustion prayed for damages as well as injunctive relief. The district court did not rule on that request and thus we do not address it. Accordingly, we will vacate the district court's order of December 4, 1981, in its entirety, except insofar as it dismissed Princeton Combustion's request for an order to NASA to divulge certain information about the procurement process, see note 6 supra. We will remand the case to the district court for any further proceedings, consistent with this opinion, as may be sought by Princeton Combustion.
 
 
 
 [1]
 The district court refused NASA's request for a stay pending appeal, but on December 17, 1981, this court granted appellants motion for a stay of the district court's injunctive order
 
 
 [2]
 Out of a possible score of 1000, Shaker's proposal was rated 742 and Princeton Combustion's, 667. Most of the others were rated between 500 and 650
 
 
 [3]
 These three areas were (1) understanding of the problem; (2) technical approach; and (3) clarity and completeness of the proposal
 
 
 [4]
 In the fourth area, personnel qualifications, Shaker showed only minor strengths, while the TEC found no specific strengths in Princeton Combustion's proposal in this respect
 
 
 [5]
 NASA asserts that this court has jurisdiction over the appeal by virtue of 28 U.S.C. § 1291. It is unclear, however, whether there has been a final judgment in this case. Although the effect of the district court's order of December 4, 1981, was much like that of a final injunctive order, the district court applied the standards governing the grant of preliminary injunctive relief. See also Order of December 4, 1981 (noting that "(t)his matter (came) before the Court on plaintiff's application for a preliminary injunction"). App. at 303
 
 
 [6]
 In its complaint, Princeton Combustion requested that NASA be ordered to divulge certain information regarding the procurement process. In its opinions and orders of November 20 and December 4, 1981, the district court denied this request on the ground that Princeton Combustion had failed to exhaust the administrative procedures set out in the Freedom of Information Act, 5 U.S.C. § 552. See Order of December 4, 1981, P 3 (dismissing complaint insofar as it seeks release of the information). App. 303. Princeton Combustion did not take an appeal from the dismissal of that portion of the complaint, and accordingly P 3 of the district court's order of December 4, 1981, is not before us
 
 
 [7]
 This document, entitled "Third Certification of Dr. Martin Summerfield in opposition to Defendant's (NASA's) Motions to Suspend Injunction and for Reconsideration," asserted that "(n)owhere does Mr. Hudson (a NASA official) state (in his affidavit) that NASA followed" § 3.802-4(b)(2)
 
 
 [8]
 The district court held that it had authority under Fed.R.Civ.P. 15(b) to rule on the issue of compliance with § 3.802-4
 
 
 [9]
 Princeton Combustion, on the other hand, alleged that it had sent the telegram early in the morning of the 25th and that NASA had received it before signing the contract. The district court made no finding on this issue because it voided the contract on other grounds