**LEATH, McCARTHY & MAYNARD, INC.**

v.

**ARMY AND AIR FORCE EXCHANGE SERVICE, Richard D. Murray, Commander, Vivian R. West, Chic Hosiery, Corp.**

Civ. A. No. 3–84–2086–H.

United States District Court,
N.D. Texas,
Dallas Division.

March 1, 1985.

---

M. David Bryant, Jr., Hughes & Hill, Dallas, Tex., Richard S. Zackin, Crummy Del Deo Dolan & Purcell, Newark, N.J., for plaintiff.

Stafford Hutchinson, Asst. U.S. Atty., Ernest R. Higginbotham, Strasburger & Price, Dallas, Tex., Dean Gibson, Berry, Hogewood, Edwards & Freeman, Charlotte, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This case is before the Court on Plaintiff's Brief in Support of Application for Preliminary Injunction, filed December 19, 1984; Federal Defendants' Opposition, filed January 7, 1985; Defendant Chic Hosiery Corporation's Brief in Opposition, filed January 7, 1985; and Plaintiff's Reply Brief, filed February 20, 1985. Each submission has supporting affidavits.

### Factual Background

This case arises out of the award of a two-year requirements contract under Solicitation No. AAFES–MR–A82–37–84–001, awarded by Defendant Army and Air Force Exchange Service ("AAFES") to Defendant Chic Hosiery. The contract concerned the supply of women's hosiery to be stocked as AAFES' house brand.

Plaintiff Leath, McCarthy and Maynard ("LM & M") had been the supplier of the hosiery products since 1979. In the latter part of 1983, the AAFES contracting officer, Defendant Vivian R. West, sought and received LM & M's permission to distribute its specifications for the product to various potential suppliers for the submission of samples. The letter (MR–A/2) stated: "Items submitted for review must be of 'equal or better' quality than specifications indicated." Exhibit C, Plaintiff's Brief.

Chic responded to the letter, and included samples and product data sheets. Although Chic apparently misunderstood the terms of the letter, Hanks Transcript at 88, the samples were not of what AAFES defined as comparable quality. Plaintiff's Exhibit F, Page Affidavit.

Following receipt of all responses to MR–A/2, AAFES issued the Solicitation to seven companies, including LM & M and Chic. The Solicitation incorporated by reference the quality specifications of MR–A/2:

1. Style numbers indicated above are those submitted by prospective offerors in response to AAFES–MR–A letter dated 6 Oct. '83 [MR–A/2], incorporated herein by reference, which provide specifications for items listed herein. By submission of a proposal offerors certify that their products/style numbers are

equal to or better than that supplied in the AAFES–MR–A letter.

Solicitation, Plaintiff's Exhibit B at 1.

The Chic style numbers provided in response to MR–A/2 were listed in the Solicitation as "Acceptable Styles". *Id.* Plaintiff was not aware, at this point, that the Chic specifications did not meet those incorporated in the Solicitation. West apparently relied on Chic's certification to indicate responsiveness. West Affidavit at 4.

Chic's bid was the lowest. The contract was entered into on July 10, 1984. *See* Exhibit A, Plaintiff's Brief. Plaintiff was eventually the fourth-lowest bidder.

In September of 1984, AAFES sent the Chic samples to an independent testing service. The results included the following statements: "[T]he test report clearly indicates that the Chic samples do not conform to the LM & M manufacturing specifications.... These differences in the overall garment construction qualities have caused considerable differences in the performance characteristics." *See* Exhibit F, Plaintiff's Brief. Other defects were subsequently noted.

The deficiencies were brought to Chic's attention and were subsequently corrected. Spruill Affidavit at 4. It appears that Chic is now providing goods in conformity with the specifications.

Plaintiff seeks a preliminary injunction prohibiting further performance of the Chic-AAFES contract pending a trial on the merits. The usual standards governing injunctive relief apply, *see John Carlo, Inc. v. Corps of Engineers*, 539 F.Supp. 1075, 1079 n. 6 (N.D.Tex.1982), and the Court will address them seriatim.

### Substantial Likelihood of Prevailing on Merits

■ To successfully challenge the legality of a procurement decision, a party must show either that:

(1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or

(2) the procurement procedure involved a clear and prejudicial violation of applicable statute or regulations.

*Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1271 (5th Cir.1978).

■ Plaintiff appears to focus on the second option. To secure a "fair, equitable and impartial" procurement policy, DOD Instruction No. 4105.67 at ¶ D1, Plaintiff's Exhibit G, joint Army and Air Force regulation AR 60–20/AFR 147–14, provides:

Evaluation of proposal. Proposals received as a result of a multiple source solicitation will be evaluated on the basis of responsiveness, competitiveness and responsibility.

Awards of contracts. Contracts will be awarded or issued only to those responsive and responsible offerors whose proposals are most advantageous, price, fee and other factors considered ...

(a) A responsive offer is an offer that satisfies all the requirements stated in the solicitation (oral or written), including, but not limited to, delivery schedules, quality, quantity, the price stipulations and specifications.

Exhibit G at 6.

The operational regulations are set forth in Exchange Service Procurement Instruction Manual 65–1, issued by the Commander of AAFES. Responsiveness is again highlighted as the foremost consideration in the awarding of the contract:

GENERAL GUIDELINES. The three basic factors for evaluating proposals are (1st) responsiveness, (2nd) competitiveness ... and (3rd) responsibility, to be accomplished in that order.... Award of contract will be made to the responsible prospective contractor whose offer is responsive to the solicitation and is most advantageous to AAFES and its customers, considering price/fee and/or other evaluation factors set forth in the solicitation.

RESPONSIVENESS. A proposal is responsive when it fulfills all of the requirements set out in the solicitation.

a. If a proposal ... doesn't fully meet all requirements of the solicitation,

the contracting officer will determine it nonresponsive and won't consider it for award.

Exhibit G at 12–13.

These promulations carry the full force and effect of law. *Standard Oil Co. v. Johnson,* 316 U.S. 481, 484, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942).

To permit a contracting officer to accept a bid deviating from quality specifications would render meaningless the whole procedure of competitive government contracting. *Prestex, Inc. v. United States,* 320 F.2d 367, 372 (Ct.Cl.1963). The prejudice to other bidders, such as Plaintiff, is clear. If Plaintiff was permitted to submit a bid on different specifications, it may have been able to underbid Chic. *See Toyo Menka Kaisha, Ltd. v. United States,* 597 F.2d 1371, 1377, 220 Ct.Cl. 210 (1979). Regardless of whether the government's interest is now being served by the provision of complying goods under the contract, the unsuccessful bidders have a legitimate claim that Chic should not be the one supplying them. While it is speculation to suggest that Plaintiff would have received the contract absent the Chic-anery, it is also speculation to suggest that Chic would have remained the low bidder if it had understood and followed the specifications from the start.

Accordingly, given the indications of a clear and prejudicial violation of the applicable AAFES regulations, there is a substantial likelihood that Plaintiff will prevail on the merits. *Kinnett Dairies,* 580 F.2d at 1271.

### Irreparable Harm

Although courts have stated that irreparable injury occurs when a bidder loses its opportunity to have its proposal fairly and equally considered, *Georgia Gazette Publishing Co. v. U.S. Dept. of Defense,* 562 F.Supp. 1004, 1007 (N.D.Ga.1983), this proposition is not intuitively satisfying. This opportunity is past, and the granting of Plaintiff's requested injunctive relief will not restore it.[1]

Plaintiff also suggests that a loss of anticipated profits from the award of a government contract to an undeserving competitor constitutes irreparable injury. *Minnesota Mining & Mfg. Co. v. Shultz,* 583 F.Supp. 184, 191 (D.D.C.1984). The case relied on by *3M,* however, is *Dickey-John Corp. v. Bergland,* 444 F.Supp. 451, 455 (D.D.C.1978). Judge Gasch wrote:

Plaintiff correctly notes that its action for money damages as a disappointed potential bidder would not include recovery of lost profits, but would be limited to recovery of bid preparation costs. Thus, plaintiff's only adequate remedy for being improperly denied the opportunity to submit a responsive bid is a chance to bid after resolicitation. This argument, however, is not sufficient by itself to justify a preliminary injunction....

Plaintiff's argument here is weaker than in *Dickey-John.* In *Dickey-John,* the contract was for ninety-five rear-infrared reflectance instruments for use by the Federal Grain Inspection Service. Such a purchase appears to be a one-time transaction; if the contract was performed pending the final judicial determination, the plaintiff's opportunity to earn the profits on the transaction is irretrievably lost. Here, however, if performance were to be enjoined, the Court is of the opinion that the women's hosiery market is such that consumer demand would merely cause substitution away from the depleted AAFES private label brand to other lines of hosiery during the operation of the injunction. In this event, the opportunity for Plaintiff to recapture the lost profit on the sales that would have been made *pendente lite* cannot be preserved for the outcome of resolicitation.

---

**1.** Plaintiff seeks a preliminary injunction "enjoining the AAFES defendants ... from placing any orders whatsoever with Chic for the hosiery products which are the subject of the Solicitation and further enjoining said defendants from taking delivery of any such products pursuant to the Contract." Verified Complaint at 11.

The preliminary relief is thus not necessary to "preserve the possibility of ordering resolicitation", *id.* at 451, as would be the case with a one-time purchase contract.

In other words, the Court is of the opinion that the declaratory and equitable relief available pending final disposition of this matter would adequately redress Plaintiff's alleged injuries.[2]

### Balance of Equities

The equities favor the federal defendants. An injunction pending determination of resolicitation would not redress any injury being suffered by Plaintiff, and would disrupt the supply of hosiery to AAFES outposts worldwide. While the Court appreciates Plaintiff's offer "to timely provide products of the same high quality that it has provided in the past", unless this offer is purely charitable, the Court is without authority to accept. It would also appear, as reasoned above, that any interim profits to be garnered by Chic would be funneled to other brands during the operation of an injunction, and not merely postponed pending a final determination.

### The Public Interest

There is a strong public policy served by ensuring that government procurement officials follow appropriate procurement procedures and regulations. *Georgia Gazette*, 562 F.Supp. at 1011. Other than through retribution against errant officials, however, this public interest is not served by halting performance of the contract without contemporaneous resolicitation.

 Preliminary injunctive relief is an extraordinary and drastic remedy. *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2d Cir.1969), *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). In addition to the usual caution surrounding the granting of such relief, the Court is mindful of the overriding concern in cases of this type: avoidance of disruptions in the procurement process ab-

sent a clear need for judicial intervention. *John Carlo, Inc.*, 539 F.Supp. at 1080.

 Accordingly, the Court is of the opinion that the preliminary injunctive relief of the nature requested should not be granted in this case. Plaintiff's Application will be **DENIED,** and the parties should proceed towards an expeditious final disposition.

SO ORDERED.

on the basis of motions for summary judgment.

---

**2.** In this regard, it appears that the final disposition of this matter might proceed expeditiously