LEATH McCARTHY & MAYNARD,
INC., Plaintiff,

v.

ARMY AND AIR FORCE EXCHANGE
SERVICE, et al., Defendants.

Civ. A. No. 3–84–2086–H.

United States District Court,
N.D. Texas,
Dallas Division.

June 27, 1985.

M. David Bryant, Jr., Hughes & Hill, Dallas, Tex., Richard S. Zackin, Crummy Del Deo Dolan & Purcell, Newark, N.J., for plaintiff.

Stafford Hutchinson, Asst. U.S. Atty., Ernest R. Higginbotham, Strasburger & Price, Dallas, Tex., Dean Gibson, Berry, Hogewood, Edwards & Freeman, Charlotte, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This case is before the Court on Plaintiff's Motion for Summary Judgment, filed April 8, 1985; Federal Defendants' Response and Cross-Motion, filed May 3, 1985; Defendant Chic Hosiery Corporation's Opposition and Motion for Summary Judgment, filed May 3, 1985; and Plaintiff's Reply Brief, filed June 4, 1985.

This case arises out of the award of a two-year requirements contract under Solicitation No. AAFES–MR–A82–37–84–001, awarded by Defendant Army and Air Force Exchange Service ("AAFES") to Defendant Chic Hosiery. The contract concerned the supply of women's hosiery to be stocked as AAFES' house brand.

Plaintiff Leath McCarthy & Maynard, Inc. ("LM & M") has been supplying comparable hosiery to AAFES under the brand name "TruTest" since 1979. In October of 1983, the AAFES contracting officer, Defendant Vivian R. West, issued a presolicitation notice to 28 vendors of hosiery. The notice requested each interested source to submit samples consistent with guidelines set forth in an enclosure reciting detailed specifications. These specifications were those of the LM & M product, used with its permission. Specifically, the notice (MR-A/2) stated: "Items submitted for review must be of 'equal or better' quality than specifications indicated". Plaintiff's Exhibit A at 4.

Seven sources submitted samples and product data sheets, including LM & M and Chic. Although Chic apparently misunderstood the terms of the letter, Hanks Transcript at 88, its samples were not of what the AAFES specifications defined as comparable quality. Page Affidavit, Plaintiff's Exhibit F at 3. *See* discussion at n. 3, *infra.* Nevertheless, after a review of the samples for general acceptability, West determined each to be eligible to participate in the formal solicitation. West Affidavit at 3.

On March 19, 1984, AAFES issued Solicitation No. AAFES–MR–A–82–37–84–001 to the seven prospective offerors. Plaintiff's Exhibit C. The Solicitation incorporated by reference the quality specifications of MR–A/2:

1. Style numbers indicated above are those submitted by prospective offerors in response to AAFES–MR–A letter dated 6 Oct. '83 [MR–A/2], incorporated herein by reference, which provide specifications for items listed herein. By submission of a proposal offerors certify that their products/style numbers are equal to or better than that supplied in the AAFES–MR–A letter.

The Chic style numbers provided in response to MR–A/2 were listed in the Solicitation as "Acceptable Styles". *Id.* LM & M was unaware, at this point in time, that the Chic specifications did not meet those incorporated in the Solicitation. West apparently relied on Chic's certification to indicate responsiveness. West Affidavit at 4. On or about April 10, 1984, Chic submitted its proposal in response to the Solicitation and offered to supply the styles which had been designated as "Acceptable Styles".

After the closing date for receipt of proposals, West reviewed each of those received to ensure that all necessary information, including prices, FOB terms, shipping points, weights and cube data had been provided. She also reviewed each proposal

to determine whether it was timely received and was signed without qualification to the certification or other provision. Based upon this review, she determined all seven proposals to be responsive. West Affidavit, Federal Exhibit C at 4.

Chic's bid was the lowest in price. LM & M's offer initially ranked third in competitive standing of the four offerors deemed to lie in the competitive range. West embarked on further negotiations with the final four, *see* Exchange Service Manual 65–1, ¶ 3.1.5, 3.5.7, Federal Exhibit C, Attachment 4, which resulted in a realignment of the competitive ranking with Chic remaining first and LM & M dropping to fourth. After determining that Chic was a responsible contractor, the Contracting Officer awarded the contract to Chic on July 9, 1984.

In September of 1984, preproduction samples of the Chic merchandise were sent to an independent testing service by AAFES. The results included the following statement: "[T]he test report clearly indicates that the Chic samples do not conform to the LM & M manufacturing specifications.... These differences in the overall garment construction qualities have caused considerable differences in the performance characteristics". Plaintiff's Exhibit H. Other defects were subsequently noted.

The deficiencies were brought to Chic's attention and were subsequently corrected. After analysis of initial garment deliveries, the Contracting Officer concluded as of mid-January 1985 that Chic was in complete compliance with the contract specifications. West deposition at 159–161.

Plaintiff's application for a preliminary injunction prohibiting further performance of the Chic-AAFES contract pending a trial on the merits was denied by this Court. *Leath McCarthy & Maynard, Inc. v. Army and Air Force Exchange Service,* 604 F.Supp. 514 (N.D.Tex.1985). Plaintiff now moves for summary judgment on Count I of the Complaint, seeking the cancellation of the contract, the resolicitation on an expedited basis and interim injunctive relief. LM & M further states that it will not pursue its claims for damages against Chic should "sufficient equitable relief" be forthcoming from the Court. Plaintiff's Brief at 3. Chic seeks summary judgment on Counts II–IV.

### Contentions

■ To successfully challenge the legality of a procurement decision, a party must show either that:

(1) the procurement official's decisions on matters committed primarily to her own discretion had no rational basis, or

(2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.

*Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1271 (5th Cir.1978).

As a general matter, it is the policy of the Department of Defense that procurement shall be accomplished in a "fair, equitable and impartial" manner. DOD Instruction No. 4105.67 at ¶ D1, Plaintiff's Exhibit I. To further this policy, joint Army and Air Force regulation AR 60–20/AFR 147–14, provides:

Evaluation of proposal. Proposals received as a result of a multiple source solicitation will be evaluated on the basis of responsiveness, competitiveness and responsibility.

Awards of contracts. Contracts will be awarded or issued only to those responsive and responsible offerors whose proposals are most advantageous, price, fee and other facts considered ...

(a) A responsive offer is an offer that satisfies all the requirements stated in the solicitation (oral or written), including, but not limited to, delivery schedules, quality, quantity, the price stipulations and specifications.

¶ 3–29; Exhibit I at 6.

The operational regulations are set forth in Exchange Service Procurement Instruction Manual 65–1, issued by the Commander of AAFES. Responsiveness is again highlighted as the foremost consideration in the awarding of the contract:

GENERAL GUIDELINES: The three basic factors for evaluating proposals are (1st) responsiveness, (2nd) competitiveness ... and (3rd) responsibility, to be accomplished in that order ... Award of contract will be made to the responsible prospective contractor whose offer is responsive to the solicitation and is most advantageous to AAFES and its customers, considering price/fee and/or other evaluation factors set forth in the solicitation.

RESPONSIVENESS. A proposal is responsive when it fulfills all of the requirements set out in the solicitation.

a. If a proposal ... doesn't fully meet all requirements of the solicitation, the contracting officer will determine it nonresponsive and will not consider it for award.

ESM at Ch. 3.5.1 and 3.5.2 (Plaintiff's Exhibit I at 12–13).

These promulgations carry the full force and effect of law. *Standard Oil Co. v. Johnson,* 316 U.S. 481, 484, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942); *LM & M,* 604 F.Supp. at 517.

Plaintiff contends that the acceptance of a non-responsive bid from Chic, without giving the other suppliers an opportunity to submit bids on the lower-cost specifications outlined by Chic, constituted a clear and prejudicial violation of procurement regulations and policies. Indeed, this Court has recognized that permitting a contracting officer to accept a bid deviating from quality specifications would render meaningless the whole procedure of competitive government contracting. *Id.,* citing *Prestex, Inc. v. United States,* 320 F.2d 367, 372, 162 Ct.Cl. 620 (1963).

The federal defendants maintain that LM & M's argument is premised upon a fundamental misunderstanding of the workings of the procurement process. They state that it is necessary to recognize the distinction between Defendant West's evaluation of the general acceptability of the sample submissions, in her capacity as buyer, and her evaluation for responsiveness of the proposal received in response to the formal solicitation, in her capacity as contracting

officer. *See generally* Cross-Motion at 19. The Court's review of the question of responsiveness, it is argued, should be based upon the bid as submitted, specifically its certification, and not upon information received after bid opening. Chic's bid is argued to have been responsive because each offeror participating in the competitive solicitation was required to certify that its products were equal to or better than that specified in the AAFES MR–A/2 letter, incorporated by reference in the solicitation. AAFES further argues that it should not be charged with any pre-contract duty of investigation.

Chic also argues that the certification rendered its proposal responsive. It further asserts that it had intended all along to supply products meeting the specifications incorporated into the Solicitation, even though the samples it submitted did not so comply, and that its price proposal to AAFES was based upon the assumption that the products would need to be manufactured pursuant to the AAFES specifications based upon LM & M's product. Schulte Affidavit, Chic Exhibit C at ¶ 6.

*Responsiveness and Fairness*

At first glance, it would be easy to say that Chic's offer was responsive. AAFES sought suppliers that would furnish products equal to or better than certain specifications derived from LM & M. Chic formulated a bid on the basis of those specifications, which turned out to be the lowest in price, and certified that it would perform accordingly. According to all accounts, Chic is now supplying hosiery meeting the original specifications.

A second glance, however, reveals some bends in the road before the conclusion of responsiveness can be drawn. Regardless of which hat she may have donned previously, Defendant West designated the Chic sample submissions as "Acceptable Styles" in her capacity as Contracting Officer. Plaintiff's Exhibit D. Although she may have relied upon an implied certification by virtue of submission of a proposal, the clear terms of the Solicitation indicated that the sample styles proferred by Chic were a proper subject for bidding, while in

fact they were deficient in terms of courses and yarn content. Hanks Deposition, Plaintiff's Reply Exhibit A at 81–83.

Chic argues that it intended to either convince AAFES that its products were "equal to or better than" the specifications or to provide products in literal compliance, and that its prices were adjusted accordingly. Schulte Affidavit.[1] The Solicitation did not, however, require such an adjustment; it only requested a bid on Chic's "Acceptable Styles". Indeed, the terms of the solicitation expressly prohibit Chic from altering its product:

   8. SPECIFICATIONS/PURCHASE
      DESCRIPTIONS:
      Only the brand(s), model(s) and/or style(s) listed in Exhibit B are acceptable. Items supplied will be contractor's regular commercial products, unless otherwise authorized herein.

Schedule at 1; Plaintiff's Exhibit C.

According to Defendants' interpretations, the "acceptable styles" listed in Exhibit B of the Solicitation are mere surplusage. Submission of proposals automatically yields an implied offeror's certification, and certification automatically yields responsiveness. The above-quoted paragraph is clearly to the contrary.

There is uncontroverted evidence that there were divergences in courses and yarn content between the Chic "Acceptable Styles" and the LM & M specifications. Based upon the Court's new-found, and limited, exposure to the hosiery business, such aspects are of significance. See Page Affidavit, Plaintiff's Exhibit F. LM & M

and Chic, and perhaps some or all of the other offerors, were required to bid on supplying products of different quality, with differing implications for price.[2] See Toyo Menka Kaisha, Ltd. v. United States, 597 F.2d 1371, 1377, 220 Ct.Cl. 210 (1979).

Whether or not Chic and AAFES subsequently modified their contract to allow the supply of styles other than those in Exhibit B so as to bring Chic into compliance is irrelevant to the issue of responsiveness. As Defendants themselves maintain, responsiveness should be determined by comparison of the solicitation and the bid.

■ Although the Chic's offer was technically responsive by offering to supply precisely the "Acceptable Styles" designated in the Solicitation, the prospective offerors were effectively bidding on different products, a situation that yields all of the defects of unresponsiveness. Such a procedure, effectively allowing each bidder to draft its own specifications which, in its opinion, are "equal or better",[3] does not comply with the requirements of competitive bidding. There is lacking any basis for bidders to know what they are bidding for or against. 1A McBride and Wachtel, Government Contracts § 10.170 (1973), quoting 37 Comp.Gen. 479 (1958) and 39 Comp.Gen. 570, 572. If AAFES had determined that a product with fewer courses and a differing yarn content (and thus cheaper to produce) would be acceptable, LM & M and the other bidders would have had to be informed if the process was to retain its essential requirement of "fair

---

**1.** Although the Court has no reason to doubt the veracity of this statement, Chic's intention to simultaneously submit one bid on two undifferentiated products is puzzling.

**2.** LM & M has submitted calculations of its price based upon Chic's specifications. It asserts that its proposal would have undercut Chic's by $148,981.00. McCarthy Affidavit at 5.

**3.** Nothing in this Opinion should be interpreted as a finding that Chic's products are in any way inferior to those marketed by LM & M. AAFES could have avoided this entire litigation by utilizing a more precise standard than "equal to or better than" certain specifications. It is difficult enough for AAFES, nearly impossible for the

Court and virtually absurd for Chic to conclude that a certain Chic product is not "equal to or better than" a LM & M product. For instance, there can be no "correct" answer to whether a heavier pair of panty hose is superior to a lighter pair. After all, any product purchased by an individual is presumably regarded as "better" than its competitors by that individual. "Better" is in the eye of the beholder, in this case, AAFES. The Court's conclusion that the variance between Chic's "Acceptable Styles" and the LM & M specifications created an improper basis for bidding is solely based upon the changes AAFES has demanded of Chic to render its product acceptable. The Court in no way faults Chic for believing that its products are superior.

treatment".[4] *Minnesota Mining and Manufacturing Co. v. Shultz,* 583 F.Supp. 184, 190 (D.D.C.1984).

Nevertheless, there is no evidence that AAFES ever knowingly determined that fewer courses or a differing yarn content would be acceptable. Indeed, AAFES has insisted on the use of LM & M's precise specifications. AAFES did, however, accept Chic's implied certification that its "Acceptable Styles" matched AAFES' own conception of what constituted "equal to or better than" and adopted this determination as its own. As a result, AAFES accepted an offer and entered into a contract with a bidder that, although technically responsive, sought (unsuccessfully) to supply products differing in specifications from those which AAFES sought to purchase. Whether these circumstances merit judicial intervention is discussed below.

### Remedy

The law is clear that this Court cannot award the contract to Plaintiff LM & M. If Chic were not a participant in the process, LM & M would still not be the low bidder. *See Delta Data Systems Corporation v. Webster,* 744 F.2d 197, 204 (D.C.Cir. 1984). Nevertheless, LM & M seeks the Court to declare the contract void and to order resolicitation.

■ Even though the Court has found that the agency's decision to have been tainted by procedural irregularities, it does not automatically follow that the decision is rendered irrational or subject to judicial intervention. *Princeton Combustion Research Laboratories, Inc. v. McCarthy,* 674 F.2d 1016, 1022 (3d Cir.1982). As ob-

served above, AAFES was apparently laboring under a cloud of benign ignorance regarding the ambiguities within the Solicitation. Relying on the certification by the bidders that their products would met or exceed the LM & M-based specifications, AAFES sought to purchase LM & M-equivalent products, required the low bidder to supply LM & M-equivalent products and is now purchasing LM & M-equivalent products at a price lower than that at which LM & M was willing to supply. Thus the series of events that resulted in the Chic samples being designated by AAFES as "Acceptable Styles" perhaps caused Chic to enter into a less profitable contract than it had anticipated but did not render the Agency's decision to award the contract to the low bidder in any way irrational. The conclusion is in contrast to that of the hypothetical situation in which AAFES awarded the contract to Chic, and permitted Chic to supply the goods not complying with the specifications.

Put another way, although the Court finds a subtle violation of applicable regulations, the Court does not find a *clear and prejudicial* violation as to LM & M. *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1271 (5th Cir.1978); *LM & M,* 604 F.Supp. at 516. As noted above, were Chic totally out of the picture, LM & M's price, presumably its lowest after renegotiation, was still undercut by that of Americal and Bangle Brothers, the second and third lowest bidders, each of which had certified that it would provide goods "equal to or better than" those of LM & M at a lower price.[5]

Even if the agency's decision were to shade into irrationality or if LM & M were

**4.** A procedure for such amendments to the Solicitation is set out in ESM at CH. 3.3.10 *et seq.,* Plaintiff's Preliminary Injunction Brief, Exhibit G at 11–14. *See also General Electric Co. v. Seamans,* 340 F.Supp. 636 (D.D.C.1972).

**5.** The Court recognizes the authority for the proposition that a disappointed bidder has standing to challenge a contract award even though unable to demonstrate a "legal right" to the contract. *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 861–65 (D.C.Cir.1970). *See also Hayes International Corp. v. McLucas,* 509 F.2d 247, 256 (5th Cir.1975), *cert. denied,*

423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1973). *But see Caci, Inc.—Federal v. United States,* 719 F.2d 1567, 1575 (Fed.Cir.1983) (requiring disappointed bidder to demonstrate "substantial chance that [it] would receive an award"). These cases permit a disappointed bidder to invoke the "public interest" in responsible government procurement in support of its contest of an arguably illegal government contract. The decision to permit review, made in LM & M's favor by the Court, is a separate inquiry from that of granting injunctive relief. *Hayes,* 509 F.2d at 258.

able to show some concrete prejudice, the Court must still exercise discretion in deciding whether to grant or deny injunctive relief, guided by a balancing of three factors:

the practical considerations of efficient procurement of supplies for continuing government operations; the public interest in avoiding excessive costs; and the bidder's entitlement to fair treatment through adherence to statutes and regulations.

*Sea-Land Services, Inc. v. Brown,* 600 F.2d 429, 434 (3d Cir.1979).

As the Court of Appeals for the D.C.Circuit has warned (and has often been echoed):

In the field of government procurement, the court must be sedulous to heed the admonition that their authority to vacate and enjoin action that is illegal must be exercised with restraint lest the courts fall into the error of supposing that they may revise actions simply because [they] happen to think it ill considered, or to represent the less appealing alternative solution available.

*M. Steinthal & Co., Inc. v. Seamans,* 455 F.2d 1289 (D.C.Cir.1970).

■ Judicial intervention in procurement disputes necessarily results in delay and expenditure of funds on behalf of all parties, usually without measureable benefit to the public. *Id.; John Carlo, Inc. v. Corps of Engineers,* 539 F.Supp. 1075, 1079 n. 6 (N.D.Tex.1982). Here, there is absolutely no suggestion that a resolicitation would yield the supply of these goods at a price any cheaper than that at which they are currently being provided.

The Government represents that a direct result of any injunction in this case would be an "out-of-stock condition" in AAFES stores worldwide with a likelihood that new stock would not be obtained for at least several months. Cross-motion at 36. Although AAFES stocks brands of hosiery other than its private label and hosiery is not of integral importance to national defense, *see Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696 (5th Cir.1973), this is a consideration of some minor importance.

LM & M repeatedly asserts that it will suffer the irreparable injury of a permanent denial of its right to be fairly considered for the AAFES contract. There is, however, no evidence before the Court that LM & M's proposal was considered on anything other than its merits, or any reason related to the procedural irregularities why LM & M would advance in the competitive ranking ahead of Americal or Bangle Brothers. In terms of being given a fair opportunity to submit its best and lowest bid, neither the actions of those of Chic nor AAFES caused LM & M any deprivation. If the Court were to order an expedited resolicitation and, for argument's sake, bar Chic from participation, the only circumstance in LM & M would benefit from this opportunity to be "fairly considered" would be that resulting from a reconsideration of its price, an opportunity LM & M had already been given by AAFES. There is no legitimate injury to be prevented. *Canal Authority v. Callaway,* 489 F.2d 567, 576 (5th Cir.1974). LM & M now offers to supply the goods at Chic's prices. Plaintiff's Brief at 20. The time for this offer is past.

Accordingly, the Court is of the opinion that the equitable relief requested in Count I should be denied.

### Chic Motion

In Counts II, III and IV, LM & M seeks damages from Chic for unjust enrichment, fraud and interference with the LM & M–AAFES business relationship. Chic moves for summary judgment on the grounds that its proposal was responsive to the Solicitation, thus causing LM & M no damage, and that any recovery of damages against the government is limited to bid preparation costs.

The Court is of the opinion that the limitation of damages against the government does not preempt any state law recovery against the successful bidder. *Tectonics, Inc. of Florida v. Castle Construction Company,* 753 F.2d 957, 964 (11th Cir. 1985).

There is no basis, however, for LM & M to recover damages for lost sales and profits from Chic, which are the only actual damages sought in the Complaint. The only conceivable scenario supporting a theory of causation and relief would be one in which Chic's bid would have been higher than LM & M's if Chic had known that AAFES would insist on use of the LM & M specifications, and the same were true of Americal and Bangle Brothers. In addition, all three would have to be found to have somehow tortiously misrepresented the quality of their products. Given the uncontroverted Schulte Affidavit that Chic's prices were calculated under the assumption that the precise LM & M specifications might have to be met, there is no issue of material fact blocking the conclusion that any alleged misrepresentation as to the quality of the Chic specifications did not cause LM & M's loss of the contract. Summary judgment is thus appropriate.

Accordingly, the Court is of the opinion that Plaintiff's Motion for Summary Judgment should be, and hereby is, **DENIED** and Defendants' Motions for Summary Judgment are **GRANTED** and this case is **DISMISSED.**

SO ORDERED.