NATIONWIDE ROOFING & SHEET METAL, INC., APPELLANT, *v.* TROTWOOD HEATING, INC. ET AL., APPELLEES.

(No. CA 10060—Decided March 23, 1987.)

*Lankford & Klipfer* and *Kenneth R. Klipfer,* for appellant.

*Robert B. Shearer,* for appellees.

KERNS, J. This is an appeal from a judgment of the Court of Common Pleas of Montgomery County granting summary relief to Trotwood Heating, Inc. ("Trotwood") and Rieck Mechanical Services, Inc. ("Rieck"), and dismissing the complaint of Nationwide Roofing & Sheet Metal, Inc. ("Nationwide").

In August 1983, the United States Air Force issued an invitation for bids for basement ventilation work to be performed at Wright-Patterson Air Force Base. Pursuant to a federal small business program, the solicitation for bids was limited to contractors whose annual receipts, including those of all affiliates, did not exceed five million dollars. Both Nationwide and Trotwood submitted bids, which required self-certification of small business status. Subsequently, the contract was awarded to Trotwood, but Nationwide, which was apparently the second lowest bidder, challenged Trotwood's size certification because of its affiliation with Rieck. In reliance upon information provided by Trotwood, a regional officer denied Nationwide's protest, but the plaintiff appealed to the Small Business Administration Size Appeals Board (now Office of Hearings and Appeals). According to the record, the appeal was not brought within five days, as required by the relevant regulation which provides that unless such appeal is brought within five days after receipt of the regional office's decision, the determination on appeal will be prospective only, and will not affect the procurement contract. Hence, although the Small Business Administration Size Appeals Board found a "constellation

of connections" between Trotwood and Rieck such as would disqualify Trotwood from future small business certification, it declined to disturb the contract which Nationwide had previously sought.

The plaintiff, Nationwide, commenced the present action alleging that the defendants, Trotwood and Rieck, had fraudulently certified Trotwood as a small business, and that as a result, Nationwide was damaged by the loss of the contract. The defendants moved for summary judgment arguing, among other things, that the Small Business Act (Section 631 *et seq.*, Title 15, U.S. Code), and its attending regulations, provided the exclusive remedy and precluded any state common-law cause of action. Initially, the common pleas court overruled the defendants' motion, but upon reconsideration, the trial court issued a decision granting the moving parties summary judgment.

In the present appeal, Nationwide has set forth two assignments of error, the first of which has been stated as follows:

"1. The trial court erred to the prejudice of plaintiff-appellant in granting defendants-appellees' motion for summary judgment and dismissing the case."

The central issue posed in the appeal is whether the second lowest bidder on a small business contract can maintain a common-law action based upon fraud in state court against the successful bidder which would not have been eligible for the contract if all circumstances had been known at the time of the award of the contract. Or, stated another way, does the existence of an administrative size-determination procedure under federal law amount to a preemption of the field so as to prevent such action?

In the case of *Iconco* v. *Jensen Constr. Co.* (C.A. 8, 1980), 622 F. 2d 1291, which has characteristics remarkably similar to those of the present case, an unsuccessful bidder brought a common-law action based upon fraud and unjust enrichment upon learning that the successful bidder had subsequently been found to be ineligible by the Small Business Administration in connection with a separate unrelated contract. There, the court, in the application of Iowa law, thoroughly evaluated the policy and intendment underlying the federal procurement regulations and found neither an express nor implied purpose to preclude longstanding common-law remedies. In so holding, the court distinguished a previous line of federal cases which had held that the Small Business Act did not expressly or by implication provide for any *federal* cause of action in favor of an unsuccessful bidder. *Id.* at 1299. See *Savini Constr. Co.* v. *Crooks Bros. Constr. Co.* (C.A. 9, 1974), 540 F. 2d 1355; *Royal Services, Inc.* v. *Maintenance, Inc.* (C.A. 5, 1966), 361 F. 2d 86. See, also, *Northland Equities, Inc.* v. *Gateway Center Corp.* (E.D. Penn. 1977), 441 F. Supp. 259. Thereafter, in the case of *Tectonics, Inc. of Florida* v. *Castle Constr. Co.* (C.A. 11, 1985), 753 F. 2d 957, certiorari denied *sub nom. Collins Co.* v. *Tectonics, Inc. of Florida* (1985), 474 U.S. 848, another court, in the application of Alabama law, undertook a similar analysis and reached the same result as in the *Iconco* case. Therein, the court found that the state's interest in redressing a legal wrong under the common-law principles was not in conflict with, or in any way frustrating to, the federal interest in promoting small business and efficient contract procurement.

However, the emerging consensus, as reflected in the *Iconco* and *Tectonics* decisions, was thwarted by the conclusion in *Integrity Management Internatl., Inc.* v. *Tombs & Sons, Inc.* (D.

Kan. 1985), 614 F. Supp. 243, 246-247, where the court held that the regulation of the competitive bidding process on federal contracts was a uniquely federal prerogative. In that case, the district court was primarily concerned with policy matters, and chief among its policy concerns was a perceived disincentive for unsuccessful bidders to act in a timely manner to pursue administrative remedies. In reaching its conclusion, the court also entertained a belief that potential liability in state courts would discourage the participation and performance of qualified bidders.

A perusal of the record in the present case suggests that similar policy concerns induced the common pleas court to alter its original position and grant summary judgment to Trotwood and Rieck. However, after careful analysis, it appears that the policy rationale governing the *Integrity Management* case stemmed from a purely speculative assessment of a non-existent factual pattern. And with minimal effort, equally persuasive policy arguments could be formulated to support an opposite conclusion. In fact, the goals of the Small Business Administration would be promoted by providing further discouragement of bids by unqualified contractors; and, since a state remedy can be exercised after the fact, there would be no hindrance or impediment to the procurement process. Unquestionably, the common-law remedy would give big business second thoughts about ignoring regulations designed for the protection and promotion of small businesses.

Moreover, the concerns expressed by the trial court in the present case tend to magnify the scope and availability of the proposed common-law remedy. In the recent case of *Ferguson-Williams, Inc.* v. *BAMSI, Inc.* (C.A. 11, 1986), 782 F. 2d 940, which

was decided by the same court that decided the *Tectonics* case, the court specifically recognized that a Small Business Administration determination that the defendant was not, in fact, a qualified small business was a prerequisite to the state action. This requirement alone would drastically reduce the number of potential lawsuits; and, additionally, such a requirement would negate to some extent the alleged disincentive to exercise administrative remedies.

With regard to the availability of the proposed remedy, the appellees also ignore another important limitation which is inherent in the appellant's cause of action. Nationwide claims that Trotwood and Rieck willfully and maliciously misrepresented Trotwood's status as a qualified small business. We find no suggestion in *Iconco* or *Tectonics,* nor do we mean to imply, that liability could be imposed for a good faith, albeit mistaken, certification of small business status. And while Small Business Administration guidelines will be applied to establish the falsity of the certification, a plaintiff will not in any way be relieved of his burden of proving the other elements of his cause of action. Most notably, proof of intent would be necessary to sustain a fraud claim. See 50 Ohio Jurisprudence 3d (1984) 463, Fraud and Deceit, Section 110.

The rationale of the *Iconco* and *Tectonics* cases has met with some approval, *Fordice Constr. Co.* v. *Central States Dredging Co.* (S.D. Miss. 1986), 631 F. Supp. 1536; *Leath McCarthy & Maynard, Inc.* v. *Army & Air Force Exchange Service* (N.D. Tex. 1985), 616 F. Supp. 1028, 1034, and the recent refusal of the Supreme Court to grant further review of the *Tectonics* decision (*id.* at 474 U.S. 848) lends some inferential support to the appellant's position herein.

Ordinarily, preemption of state

14

law by federal statute or regulation is not favored in the absence of compelling reasons. Hence, a court should not strain for conflicts between state and federal law where none clearly exists. *Joseph E. Seagram & Sons, Inc.* v. *Hostetter* (1966), 384 U.S. 35, 45. Here, Congress did not ordain an unmistakable course, and the nature of the regulated subject matter permits a reasonable alternative remedy. See *Commonwealth Edison Co.* v. *Montana* (1981), 453 U.S. 609, 634. In this case, therefore, as in the *Iconco* and *Tectonics* decisions, the scheme of federal regulation governing the restrictions on bidding is not so pervasive, nor the federal interest so dominant, as to preclude the cause of action.

Accordingly, the appellees were not entitled to dismissal of the claim as a matter of law. And since the materials submitted in conjunction with the motion for summary judgment did not resolve all relevant factual issues, such judgment was premature. Civ. R. 56; *Duke* v. *Sanymetal Products Co.* (1972), 31 Ohio App. 2d 78, 60 O.O. 2d 171, 286 N.E. 2d 324. The assigned error is sustained.

The second assignment of error has been alleged by the appellant as follows:

"2. The trial court erred to the prejudice of plaintiff-appellant and abused its discretion in reversing and vacating its earlier decision and entry overruling defendants-appellees' motion for summary judgment solely upon a motion for reconsideration and clarification."

Understandably, the appellant was disappointed when the trial court set aside its comprehensive and well-reasoned initial decision; but, at this juncture, the argument in support of the alleged error is rendered moot by our disposition of the first assignment of error. However, we note in passing that the trial court's exercise of discretion in this matter was not violative of any rule of procedure; and, for this reason, the alleged error is overruled.

The judgment of the court of common pleas is reversed and the cause is remanded to that court for further proceedings according to law.

*Judgment reversed
and cause remanded.*

WILSON and WOLFF, JJ., concur.