**SOLON AUTOMATED SERVICES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 86–2752.

United States District Court, District of Columbia.

Jan. 13, 1987.

As Amended April 1, 1987.

Alexander J. Pires, Jr., Jeffrey A. Knishkowy, Scott, McLeod, Himmelberg, Matz, Pires & Price, Washington, D.C., for plaintiff.

Paul L. Colby, Asst. U.S. Atty., Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

This matter is before the Court on defendant's motion to dismiss, or in the alternative, for summary judgment and on plaintiff's cross-motion for summary judgment.[1] Plaintiff, Solon Automated Services, Inc. ("Solon") filed suit to challenge the government's award of a contract for the rental, installation and maintenance of 477 laundry machines at Navy bases in the Norfolk, Virginia area to Commercial Laundry Equipment Company ("Commercial"). After careful consideration of the arguments at the preliminary injunction hearing, the memoranda filed in this action and the entire record herein, the Court shall deny defendant's motion to dismiss for lack of standing and shall grant plaintiff's motion for summary judgment.

## STATEMENT OF FACTS

On June 24, 1986, the Regional Contracting Department of the Naval Supply Center in Norfolk, Virginia issued Solicitation # N00189–86–R–0406, for the installation,

---

**1.** Plaintiff's preliminary injunction motion need not be addressed in light of the Court's ruling here.

rental and servicing of 477 laundry machines at several Navy military stations in the Norfolk area. Solon had been providing laundry services at these Navy locations for the past nine years. The solicitation required the offeror to agree to provide services for one base year and to promise to extend performance for two option years. (The government preferred a multiyear contract but was unable to directly solicit such bids.) The solicitation stated that "the Government may reject an offer as nonresponsive it if is materially unbalanced as to the prices for the basic requirement and the option quantities." Tr. 116. Each bid was to contain prices in proportion to costs. No preproposal conferences were held.

In response to its solicitation the Navy Supply Center received ten offers. On August 14, 1986, all ten offerors were advised by telephone to provide their "best and final" proposals by August 20. The results from the ten bidding companies were as follows:

| Name | Base Year | Option Year # 1 | Option Year # 2 | Average |
|---|---|---|---|---|
| 1. Commercial Laundry Equipment | $22.00* | 11.00 | 7.00 | 13.33 |
| 2. Active Appliance Sales, Inc. | 14.40 | 14.40 | 14.40 | 14.40 |
| 3. Crown Laundry & Dry Cleaners | 22.32 | 17.20 | 4.45 | 14.66 |
| 4. Chicago Coin Meter Co. | 16.65 | 16.65 | 16.65 | 16.65 |
| 5. Solon Automated Services | 18.99 | 18.99 | 18.99 | 18.99 |
| 6. All Valley Washer Services | 19.50 | 19.50 | 19.50 | 19.50 |
| 7. Aquasis Services, Inc. | 29.15 | 19.71 | 13.14 | 20.67 |
| 8. C.C. Distributors, Inc. | 22.01 | 22.01 | 22.01 | 22.01 |
| 9. Rivers and Murphy Ent. Corp. | 24.02 | 24.98 | 25.98 | 24.99 |
| 10. C.L. Richard Co. | 34.12 | 22.41 | 27.41 | 27.98 |

* Prices are set forth as price/machine/month, extrapolated from the Abstract of Bids received from the Navy Supply Center.

On August 22, 1986, Lieutenant Blount of the Regional Contracting Department contacted Paul Johnson, President of Commercial, to request written clarification of a numerical discrepancy between Commercial's bid sheet and its cover letter, and to ask Commercial to fill out a certification form which should have accompanied the offer. Lt. Blount also sought references on Commercial's performance of other government contracts. On August 29, 1986, Lt. Blount asked Commercial to extend its offer but would not answer Mr. Johnson's inquiries with respect to which company would receive the contract. Mr. Johnson informed Lt. Blount that whichever company was awarded the contract would need to be advised as soon as possible so that it could order new machines to meet the October 1 schedule. Blount Affidavit ¶¶ 3 & 4.

On September 10, 1986, the Navy Supply Center awarded Commercial the contract. On September 15, 1986, Mr. Johnson told Mr. Murray of Solon the contract award price. Watson Affidavit ¶ 19. He purportedly also told Mr. Murray that he had put Commercial's factory on alert three weeks earlier. Murray Affidavit ¶ 10. Solon submitted a formal bid protest to the General Accounting Office ("GAO") on September 23, 1986. The GAO informed Solon that its protest was untimely filed.

Solon then filed a motion for temporary restraining order to prevent Commercial's performance of the contract. The Court denied plaintiff's motion on October 7, 1986. To date, Commercial has installed the machines and has begun servicing them under the contract.

## DISCUSSION

*Motion to Dismiss*

Defendant has moved to dismiss the complaint on grounds that plaintiff lacks standing to maintain this action. Defendant relies primarily on *Mideast Systems and China Civil Construction v. Hodel,* 792 F.2d 1172 (D.C.Cir.1986), for this proposition. There this Circuit stated that to have standing the plaintiff's "injury must be 'fairly traceable' to the alleged illegal act, and that the relief [plaintiff seeks] must be 'likely' to flow from a favorable judicial decision." 792 F.2d at 1176; *see Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Defendant argues that the requisite causal nexus to plaintiff's injury is not present because even if Commercial's bid had been determined to be unresponsive, plaintiff would not have been awarded the contract as it ranked fifth among the bidders. Defendant further notes that the contracting officer was not required to negotiate with bidders in the competitive range. Defendant concludes, therefore, that there is no nexus between the government's action and plaintiff's alleged injury. It claims, moreover, resolicitation would not satisfy the redressability requirement of standing.

Plaintiff argues the solicitation specifically "reserved the [government's] right to accept other than the lowest offer" and, therefore, if the three unresponsive bids had been eliminated the government could have negotiated and awarded the contract to any of the remaining seven bidders. Plaintiff contends its injury, "the inability to be considered for negotiation as one of the seven bidders or to participate in a fair procurement," is directly traceable to defendant's actions. Pltf. S.J. at 6. Plaintiff also argues that once the three unresponsive bids are removed plaintiff's bid was comparatively low (third of seven), and because defendant could have rejected all the bids or awarded it to any of the remaining bidders other than the lowest one, it had a substantial chance of being awarded the contract.

In a long line of cases, this Circuit has clearly held a disappointed bidder has standing to challenge a federal contract award. *See, e.g., Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838 (D.C.Cir.1982); *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C. Cir. 1970). This Circuit stated in *Scanwell Laboratories,* the leading case on this issue, that

> the public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity essentially as a 'private attorney general.'

424 F.2d at 864. The Court indicated that to have standing it was not necessary for the disappointed bidder to prove that he would have been awarded the contract if the government had followed proper procedure.

In *CACI, Inc.-Federal v. United States,* 719 F.2d 1567, 1575 (Fed.Cir.1983), the Court found an unsuccessful bidder claiming as injury "the government's breach of its implied contract to deal fairly with all bidders denied ... [it] the opportunity to have its bid considered solely on the merits," had standing to challenge the contract award. The court went on to note that "an injunction barring the award would correct this alleged injury since it would require the government, if it wants to go ahead with the procurement, to repeat the process under circumstances that would eliminate the alleged taint of the prior proceedings." *Id.* Plaintiff here allegedly suffered a similar injury from the Navy's procurement procedure.[2]

---

2. In keeping with the progeny of *Scanwell Laboratories,* the Court finds that the causal nexus and redressability requisites of standing are present. Defendant's reliance, to the contrary, on *Mideast Systems, supra,* is misplaced. There the court determined that the causal connection and redressability element were too attenuated to confer standing on the unsuccessful bidder because the contract award decision was made by the Northern Mariana Islands, which was not a party to the suit. The named defendant, the Department of Interior, had no authority to award the contract to the unsuccessful bidder. 792 F.2d at 1177. The facts in the present

Defendant, however, argues an unsuccessful bidder only has standing to challenge the award if it was the next lowest bidder. In making this argument, though, the government places undue emphasis on *Caddell Construction Company v. United States*, 9 Cl.Ct. 610 (1986). There the Claims Court found that a bidder ranking third in a field of four did not have standing under 28 U.S.C. § 1491(a)(1) and (a)(3) to challenge the contract award because it could not show it had a "substantial chance of award." *Id.* at 613. This Circuit, though, has not adopted the "substantial chance of award" test. As one district court recognized, in light of *Scanwell Laboratories* and its progeny, "a disappointed bidder has standing to challenge a contract award even though unable to demonstrate a 'legal right' to the contract.... The decision to permit review is a separate inquiry from that of granting injunctive relief." *Leath McCarthy & Maynard v. Army and Air Force Exchange Service*, 616 F.Supp. 1028, 1033 n. 5 (N.D.Tex.1985) (plaintiff ranked fourth out of four bidders; disappointed bidder had standing to challenge award). It is not necessary for plaintiff to prove it would have won the contract if Commercial's bid had been rejected. An order requiring the Navy to resolicit bids would redress the injury by giving responsive bidders an opportunity to be evaluated in a fair procurement procedure. This Court finds, therefore, that Solon has standing to challenge the contract award to Commercial even though it did not submit the second lowest bid.

*Summary Judgment*

Summary judgment is appropriate when there are no genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court recently clarified the role of summary judgment stating:

> Rule 56 must be construed with due regard not only for the right of persons asserting claims and defenses that are adequately based in fact to have those

action are sufficiently distinct from *Mideast Systems* that the Court finds this precedent inapposite

claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, courts must approach summary judgment motions with an even hand, evaluating all concrete evidence provided, and drawing all inferences in favor of the party opposing the motion.

The scope of judicial review of procurement decisions is a narrow one. The Court should only overturn a procurement determination if there was no rational basis to support the decision. *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir. 1971). In *M. Steinthal*, this Circuit held that

> [i]f the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.

*Id.* The disappointed bidder must demonstrate that "(1) the procurement official's decision on matters committed primarily to his own discretion had no rational basis or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii Limited v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973) (negotiated cost-plus-award-fee government contract); *see also Delta Data Systems v. Webster*, 744 F.2d 197, 204 (D.C.Cir.1984).

Plaintiff's principal argument is that the Navy Supply Center's award to Commercial violated federal acquisition regulations because Commercial's bid was materially and mathematically unbalanced. Defendant argues Commercial's bid was numerically, but not materially unbalanced. Defendant asserts, naturally, that the Navy's

site to the case at bar.

award was rational and fully complied with federal acquisition regulations and case law.

The acquisition regulations state that "any proposal submitted for the negotiations of prices for items of supplies shall distribute costs within contracts on a basis that ensures that unit prices are in proportion to the items' base cost.... Any method of distributing costs to line items that distorts unit prices shall not be used." 48 C.F.R. § 52.215–26. Although the regulations merely provide that "the Government may reject an offer as nonresponsive if it is materially unbalanced as to prices for the basic requirement and the option quantities," 48 C.F.R. § 52.217–5(b) (1984), the case law of the Comptroller General makes it clear that the agency must reject unbalanced bids. *See e.g., Fidelity Moving Storage Co.*, B 222109.2, May 21, 1986, 86–1 CPD ¶ 476. The Navy solicitation itself mirrored the language of 48 C.F.R. § 52.217–5(b) and explained that "an offer is unbalanced when it is based on prices significantly less than costs for some work and prices which are significantly overstated for the work." Tr. 116. The Comptroller General's test for determining whether a bid is materially unbalanced is as follows:

(1) does each bid item carry its share of the cost of the work plus profit, or is the bid based on nominal price for some work and enhanced prices for other work?

(2) is there a reasonable doubt that award to the bidder submitting the mathematically unbalanced bid will result in the lowest ultimate cost to the government?

*See, e.g., Fidelity Moving & Storage Co., supra; Gracon Corp. v. U.S.*, 6 Cl.Ct. 497 (1984); *Crown Laundry and Dry Cleaners, Inc.*, B–201795.2; B–209311, April 22, 1983, 83–1 CPD ¶ 438 ("Crown Laundry II").

Plaintiff argues that Commercial's bid fails under this test. Plaintiff notes that

Commercial's bid for year one was 100 percent higher than the bid for option year one and more than 200 percent higher than option year two. Commercial, moreover, charged the Navy 55 percent of total costs in year one; Commercial's bid does not become low until thirty first month of the contract.[3] Plaintiff asserts, and the Court agrees, contrary to defendant's claim, that the $19,000 price differential between Commercial's bid and its bid is not significant as Commercial's bid does not become the lowest bid until well into the second option year. *See Lear Siegler*, B–2055194.2, June 29, 1982, 82–1 CPD ¶ 632 ($98,169 price advantage was not enough to overcome the finding that the bid was materially unbalanced).

Defendant argues the regulations allow for contingencies and risks in the evaluation of the reasonableness of a bid. The regulations provide that cost analysis includes "the necessity for and reasonableness of proposed costs, including allowances for contingencies." 48 C.F.R. § 15.-805–3L(a)(1). Defendant notes that because the solicitation required all new machines, a bidder's initial outlay could be quite high. Defendant argues the Navy could terminate the contract in one year thereby preventing a company from amortizing costs over the full three years. The government concludes, therefore, it was rational for the agency to consider this risk factor in awarding the contract to Commercial. Plaintiff argues, however, that even allowing for contingencies the bid is extremely unbalanced and should have been rejected. In *Applicators, Inc.*, B–215035, June 21, 1984, 84–1 CPD ¶ 656, the Comptroller General found that a front-loaded bid was not enough alone to justify a determination that the bid was materially unbalanced. The Board stated that it must "determine whether Applicators' front-loading has caused the base period of its bid to carry a disproportionate share of the cost and profit of the total work." *Id.* There

---

**3.** Solon contends that Commercial's bid in the second option year is below the cost of doing business. The Court, however, does not find the single affidavit submitted on this point suffi-

cient to warrant consideration of this point in evaluating whether the agency violated its regulations by accepting a materially unbalanced bid.

the Comptroller General found the front-loaded bid was not materially unbalanced because there was a rational basis for allocating equipment costs to the base year since there would be no use for the equipment once the contract was completed. Here, there is no indication that Commercial will be unable to use the machines following contract performance. In *Solon Automated Services,* B–206449.2, December 20, 1982, 82–2 CPD ¶ 548, moreover, the Board found that although initial costs may be substantial and the base price accordingly higher than option year prices, base and option year prices must be reasonably related to the expenses the bidder will incur in that year. Even though there the Army expected to exercise its options, it would not have realized a cost advantage until the last month of the second option period and, therefore, the Comptroller General held that the bid was materially unbalanced. *Id.*

Solon argues that at least one of the options will have to be exercised by the government to attain a financial benefit from Commercial's bid and that there is a reasonable doubt as to whether the Navy would exercise either of the options. The government asserts that it is reasonably certain to exercise the options to avoid a break in the continuity of the service to the Navy bases. The Comptroller General, though, has stated that "despite the intent to exercise the options, intervening events could cause the contract not to run its full term, ... resulting in inordinately high cost to the Government and a windfall to the

bidder." *Crown Laundry and Dry Cleaners, supra,* 83–1 CPD ¶ 438 (Air Force rejected bid where front-loaded base period did not become low until well into last option period; Comptroller General affirmed finding of materially unbalanced bid). Similarly, in *Lear Siegler* the Comptroller General found that "despite the Army's current position that it 'expects to exercise the options,' we believe that, in view of SAE's front-loaded bid structure and the fact that it is not until well after the exercise of the third and final option year that SAE's total cost becomes low, there is reasonable doubt that award to SAE will result in the lowest ultimate cost to the government." 82–1 CPD ¶ 632.[4] As in the above cited cases, Commercial's bid does not become the lowest offer until nearly the end of the second option year. There is no guarantee both option years will be exercised.

The Court finds, therefore, that Commercial's front-loaded bid was materially unbalanced such that the award to Commercial raises a reasonable doubt as to whether its contract cost will be the lowest ultimate cost to the government. The Navy Supply Center's acceptance of the materially unbalanced, unresponsive bid tainted the entire procurement process. The agency's broad discretion in evaluating proposals and negotiating contracts only comes into play once all the nonresponsive bids have been removed from consideration. The agency should have rejected Commercial's materially unbalanced bid before evaluating the remaining offers.[5] In

---

**4.** Defendant relies heavily on two other Comptroller General decisions. In *Jimmy's Appliance,* B–205611, June 7, 1982, 82–1 CPD ¶ 542, the Comptroller General found that the bid properly included setup equipment costs, the government was certain to exercise its options and that, therefore, the bid was not materially unbalanced. Unlike the case presently before the Court, the bid in *Jimmy's Appliance* became the lowest bid the first option year as opposed to the end of the second option year. Defendant also cites *Reliable Trash,* B–194760, August 9, 1979, 79–2 CPD, for the proposition that the Navy properly accepted Commercial's bid even though it did not become the lowest bid until the last option period. There the Comptroller General did not find materially unbalanced a bid which was 232 percent higher in the first

option period and 425 percent higher than the second option period because the Army was certain to exercise its options. Later decisions, however, modified the *Reliable Trash* and *Jimmy's Appliance* applications such that mathematically unbalanced, front loaded bids which would not become the lowest bids until near the end of the second option year were determined to be materially unbalanced. *See, e.g., Lear Siegler, supra; Crown Laundry II, supra.*

**5.** In light of the above finding the Court deems it unnecessary to consider plaintiff's argument that the procurement procedures were further tainted by improper communications between the Navy Supply Center and Commercial.

failing to follow the decisions of the Comptroller General and the clear import of the solicitation and the regulations, the contracting officers abused their discretion and acted in an arbitrary fashion.

■ Although Commercial has begun performance of the contract, the procurement procedure was so tainted the Court finds that a resolicitation of the contract is the appropriate remedy. The government did not commit a mere minor violation of a regulation or law, nor is Commercial's contract performance almost complete. *Cf. Solon Automated, supra,* 82–2 CPD ¶ 548 (although materially unbalanced bid, contract not terminated because eight to nine months of base year would have been serviced and Army would have paid approximately 50 percent of total three year cost). Accordingly, the Court shall order the defendant to promptly resolicit bids and award this contract in compliance with the regulations, statutes, and decisions of the Comptroller General. The status quo of the current contract shall be maintained pending resolution of the new solicitation.

An order consistent with the terms of this opinion shall be issued simultaneously herewith.

### ORDER

In accordance with the terms of the Court's opinion in the above-captioned matter issued simultaneously herewith, it is this 13th day of January, 1987,

ORDERED that defendant's motion to dismiss the complaint for lack of standing is denied; and it is

FURTHER ORDERED that defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted; and it is

FURTHER ORDERED that defendant shall expeditiously resolicit bids and award the contract at issue in compliance with the regulations, statutes and decisions of the Comptroller General. The status quo of the current contract shall be maintained pending resolution of the new solicitation; and it is

FURTHER ORDERED that this action is dismissed in its entirety.